UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| V. JAMES ADDUCI, II, | ) | |
| Plaintiff, | ) | |
| v. | ) | Civil Action No. 13-1104 (AK) |
| | ) | |
| LEONARD W. KRANE, | ) | |
| Defendant. | ) | |
| | ) | |

**MEMORANDUM OPINION**

Pending before this Court is Plaintiff V. James Adduci's Motion for Summary Judgment and Statement of Material Facts as to which there is no genuine issue (collectively,"Motion") [20]; *Pro Se* Defendant Leonard W. Krane's Request for Continuance and Extension of Time ("Opposition") [22][1], and Plaintiff's Reply Memorandum in support of Motion ("Reply") [21]. Upon consideration of the Motion, the Opposition, and the Reply, and the record in this case, for the reasons set forth herein, the Plaintiff's Motion is granted in part and denied in part. A separate Order accompanies this Memorandum Opinion.

**I. Factual Background**

On March 9, 2012, Defendant Leonard W. Krane ("Defendant") entered into a Promissory Note ("Note") for the purpose of borrowing the principal sum of One Hundred Thousand Dollars ($100,000.00) from Plaintiff V. James Adduci ("Plaintiff"). *See* Promissory Note (Motion, Exh. 1.) The Note states that "Maker [Defendant] hereby represents and warrants that the Loan evidenced hereby is made and transacted solely for the purpose of acquiring or

---

[1] Plaintiff's Request for Continuance and Extended Time is treated as an Opposition brief.

1

carrying on a business, professional or commercial activity." (Motion, Exh. 1.)

The "Maturity Date" was defined thereunder as ninety (90) days after the date of the Note. (Motion, Exh. 1 at (A).)[2] Pursuant to the Promissory Note, the Defendant was also required to pay a "Loan Exit Fee" to the Plaintiff, in the amount of Nine Hundred Thousand Dollars ($900,000.00), which is due at the time the Note is paid in full. (Motion, Exh. 1 at (B).) Defendant is further responsible for payment of a "late charge" equivalent to five percent (5%) "'[i]n the event any installment of principal and/or the Exit Fee due under this Note is not actually received by the holder thereof within fifteen (15) days after the date when the same is due. . . ." (Motion, Exh. 1.) Overdue payments of the principal and/or Exit Fee also incur "interest at the rate of ten percent (10%) per annum until paid." (*Id.*) As of February 4, 2015, Defendant has made no payment to Plaintiff. (Motion [20].)[3] Plaintiff requests payment of the loan amount, the Loan Exit Fee, late charge, and accrued interest. (Motion [20].)

## II. Legal Standard

A court should grant summary judgment if the pleadings, depositions, answers to interrogatories, and affidavits demonstrate that there is no genuine issue of material fact in dispute and the moving party is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *Holcomb v. Powell*, 433 F.3d 889, 895 (D.C. Cir 2006). The burden is on the moving party to show that there are no material facts in

---

[2] The maturity date is calculated as June 7, 2012.
[3] Defendant claims the parties agreed that Defendant will pay $125,000.00 in settlement of the matter by September 2014. Defendant then requested an extension to December 2014. *See* (Opposition [22].)

dispute and that they are entitled to judgment as a matter of law. *Branch Banking & Trust Co. v. Rappaport*, 982 F. Supp. 2d 66, 68 (D.D.C. 2013); *see also Sage v. Broadcasting Publications, Inc.*, 997 F. Supp. 49 (D.D.C. 1998).

In determining whether there exists a genuine issue of material fact sufficient to preclude summary judgment, the court must regard the non-movant's statements as true and accept all evidence and make all inferences in the non-movant's favor. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986); *see also Mastro v. Potomac Elec. Power Co.*, 447 F.3d 843, 850 (D.C. Cir. 2006). The adverse party's pleading must demonstrate the existence of a genuine issue of material fact. *See Liberty Lobby*, 477 U.S. at 248. To be genuine, the issue must be supported by sufficiently admissible evidence such that a reasonable trier of fact could find for the nonmoving party. In determining materiality, the factual assertion must be capable of affecting the substantive outcome of the litigation. *See id.*; *see also Laningham v. U. S. Navy*, 813 F. 2d 1236, 1242-43 (D.C. Cir. 1987).

### III. Analysis

#### A. Liability

**1. The Loan Exit Fee Provision Is Unreasonable**

Plaintiff and Defendant entered into a contract on March 9, 2012 whereby Plaintiff loaned Defendant $100,000.00. *See* Promissory Note (Motion, Exh. 1.) Defendant does not dispute that he entered into the contract but claims that certain provisions in the Note are "invalid, illegal, or unenforceable." (*See* Opposition [22].) The usual remedy in a breach of contract dispute is to make Plaintiff whole by Defendant paying damages in the amount Plaintiff would have received had the contract been performed as written. *See Colletti v. Aina*, No. Civ. A. 93-0394-LFO, 1995 WL 170380, at *2 (D.D.C. Mar. 29, 1995).

A court may refuse to enforce the contract, or a questionable provision in the contract, if the court determines that clause is unconscionable. *See* D.C. Code § 28:2-302(1) (2014). The court uses a two prong test for unconscionability: (1) whether one of the parties had no meaningful choice, and (2) whether the contract terms unreasonably favored one party. *See Fox v. Computer World Servs. Corp.*, 920 F. Supp. 2d 90, 97-99 (D.D.C. 2013); *Williams v. Walker-Thomas Furniture Co.*, 350 F.2d 445, 449 (D.C. Cir. 1965). To ascertain if a meaningful choice existed, the court looks at the totality of the circumstances surrounding the deal, including the parties' education, reasonable opportunity to understand the terms of the contract, or whether the terms were "hidden" or otherwise deceptive. *Fox*, 920 F. Supp. 2d at 98; *see also Williams*, 350 F.2d at 449.

Turning to the first prong of the test, the record contains no indication that Defendant did not have a fair opportunity to review the contract. (*See* Motion [20].) Further, Defendant does not contend that he did not understand the terms of the contract. (*See* Opposition [22].) Because Defendant had an opportunity to review the contract and does not show he failed to understand any term in the contract, the Court finds that Defendant had a meaningful choice to enter the contract. *See Fox*, 920 F. Supp. 2d at 98-99. Thus, Defendant fails to satisfy the first prong of the test. *See id.*

For the second prong of the test, the court must determine whether the contract terms unreasonably favored one party over the other. *See Williams*, 350 F.2d at 449. To be unreasonable, the terms must be "so extreme as to appear unconscionable according to the mores and business practices of the time and place." *Id*. At 450 (quoting 1 CORBIN, CONTRACTS § 128 (1963)). Simply stated, the contract terms are unreasonable if the terms "are so outrageously unfair as to shock the judicial conscience." *Fox*, 920 F. Supp. 2d at 99. Here, the Note indicates

that as long as the loan is paid on time, no interest will accrue. *See* (Motion Exh. 1.) Although no interest accrues during this time, the Defendant is required to pay a "Loan Exit Fee" of $900,000.00. (Motion, Exh. 1 at (B).) This equates to an interest rate of nine hundred percent (900%)[4]. A fee of this magnitude strikes the court as unfair, unreasonable and surely "shock[s] the judicial conscience." *Fox*, 920 F. Supp. 2d at 99; *see also Colletti*, 1995 WL 170380 at *2 (finding the terms of a contract "so incredible as to render the contract[] unconscionable, and [therefore], unenforceable). Therefore, Defendant satisfies the second prong of the test. *Id*.

### 2. The Loan Exit Fee Clause Is Against Public Policy

Because results of the two prong test for unconscionability are indeterminate, the Court next examines whether the contract is unenforceable by public policy. *See* Restatement (Second) of Contracts § 178 (1981). A court may refuse to enforce a provision in a contract if "the interest in its enforcement is clearly outweighed in the circumstances by a public policy against enforcement of such terms." *Jacobsen v. Oliver*, 555 F.Supp.2d 72, 79 (D.D.C.2008) (quoting Restatement (Second) of Contracts § 178 (1981)). A contract that is clear and unambiguous but violates public policy will not be enforced. *Essex Ins. Co. v. Cafe Dupont, LLC*, 674 F. Supp. 2d 166, 173 (D.D.C. 2009) (quoting *Smalls v. State Farm Mut. Auto. Ins. Co.*, 678 A.2d 32, 35 (D.C. 1996) (internal quotes omitted)).

District of Columbia usury laws prohibit interest rates in excess of twenty-four percent (24%) per annum except in certain circumstances. *See* D.C. Code § 28-3301(a). It is, however, lawful to contract for any interest rate if an individual borrows in excess of $2,500 for the

---

[4] Interest Rate Calculation. To determine interest rate, start with the formula I=P*r*t, where I=loan exit fee, P=principal, and t=time. Interest rate (r) can then be determined. *See* Simple Interest Calculator, WEBMATH.COM, http://www.webmath.com/simpinterest.html (last visited January 28, 2015).

5

"purpose of acquiring or carrying on a business, professional, or commercial activity." *See* D.C. Code § 28-3301(d)(1)(B). While this implies that the interest rate may be higher than 24%, the interest rate must still be within the bounds of the public interest.[5] In the instant case, the Loan Exit Fee translates to an estimated interest rate for the three month loan of 900%.[6] This fee, or interest rate, is unreasonable and blatantly unfair to Defendant. The interest in enforcing this provision is "clearly outweighed . . . [by] public policy." *See* Restatement (Second) of Contracts § 178 (1981). Thus, the Loan Exit Fee clause should be severed from the contract and the remaining contract enforced. *See* Restatement (Second) of Contracts § 208 (1981); (Motion, Exh. 1 at 2.)

### B. Damage Determination

Even though part of the contract is unenforceable, Plaintiff is still entitled to remedy. *See Colletti*, 1995 WL 170380 at *2. The contract states that an interest rate of ten percent (10%) per annum will be charged if the note is not paid in full within fifteen (15) days of the Maturity Date which is calculated to be June 7, 2012. (Motion, Exh. 1.) Additionally, a late charge of five percent (5%) will be added to the balance due. (*Id.*) The total due to Plaintiff is calculated using the Late Fee and Interest Rate but without the Loan Exit Fee. *See* Restatement (Second) of Contracts § 208 (1981); (Motion, Exh. 1 at 2.) Calculation of amount due is as follows:

- Principal is equal to the *sum* of $100,000.00 *plus* ($100,000.00 *times* 5%)

---

[5] The Small Business Association (SBA) states a maximum rate for a general small business loan is a base rate (typically based on the prime rate) plus an allowable spread. The allowable spread for loan terms less than seven years is a maximum of 2.25%. U.S. SMALL BUS. ASS'N., General Small Business Loans: 7(a), available at https://www.sba.gov/content/7a-loan-amounts-fees-interest-rates.

[6] *See* Interest Rate Calculation, *supra* note 3.

- Time is calculated in years from the Maturity Date through February 4, 2015[7]

- Interest is equal to the *product* of Principal *times* 10% *times* 2.66 years[8]

- Amount due is equal to the *sum* of Principal *plus* Interest

Therefore, the amount due to Plaintiff as of February 4, 2015 is One Hundred Thirty-Two Thousand Nine Hundred Thirty Dollars ($132,930.00).

### C. Tax Form

Defendant also claims that Plaintiff incorrectly issued a 1099-Misc form causing the Defendant to report an additional income of $100,000. (*See* Opposition [22].) Defendant states a 1099-C (Cancellation of Debt) form should have been submitted. (*See id.*) The Court agrees that, although Plaintiff filed a 1099-Misc., it is simple enough for Plaintiff to amend his tax returns and file a Form 1099-C once Defendant pays the debt in full. (*See* Reply [21].)

### IV. Conclusion

For the foregoing reasons, this Court concludes that Plaintiff's Motion for Summary Judgment [20] is GRANTED in part and DENIED in part. A separate Order accompanies this Memorandum Opinion.


Date: February 4, 2015              _____/s/_____
                                    ALAN KAY
                                    UNITED STATES MAGISTRATE JUDGE

---

[7] The time from June 7, 2012 to February 4, 2015 is 972 days, or 2.66 years.
[8] *See* Interest Rate Calculation, *supra* note 3.